## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

RICKIE D. HESTER,                    )
                                     )
                    Petitioner,      )
                                     )
vs.                                  )          **Case No. CIV-09-422-F**
                                     )
GREG PROVINCE, Warden,               )
                                     )
                    Respondent.      )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition and filed the state court trial transcript (Tr.). Petitioner has not filed a reply within the relevant time period, and the matter is at issue. For the following reasons, it is recommended that the petition be denied.

## Procedural Background

Petitioner was convicted, after a jury trial, of first degree murder (Count One), first degree arson (Count Two), conspiracy (Count Three), robbery with a dangerous weapon (Count Four), and kidnapping (Count Five). He was sentenced to life without the possibility of parole on Count One, thirty-five years imprisonment on Count Two, and ten years imprisonment on each of the remaining counts, to be served consecutively. District Court of Oklahoma County, Case No. CF-2004-1564. *See* Response, Ex. 3 (Opinion, Case No. F-

2006-469).

Petitioner filed a direct appeal, raising seven grounds for relief. Response, Ex. 1. The Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's convictions and sentences on the first four counts, but reversed the conviction for kidnapping (Count Five) with instructions to dismiss. Response, Ex. 3 (*Hester v. Oklahoma*, Case No. F-2006-469).

Petitioner also sought post-conviction relief in the state district court, alleging ineffective assistance of trial and appellate counsel, prosecutorial misconduct, judicial abuse of discretion, and cumulative error. Petition, pp. 2-3; Response, Ex. 4 (Petitioner's Application for Post-Conviction Relief). The district court denied post-conviction relief. Response, Ex. 5. Apparently, Petitioner did not appeal the denial of post-conviction relief. Petition, p. 3.

## Factual Background

The background facts were summarized by the OCCA in its decision on direct appeal:

Sometime during the early morning hours of March 4, 2003, Richard Hooks was beaten, stabbed multiple times, and left in a burning garage. His body was discovered by the firefighters called to extinguish the fire.

Hooks had been stabbed 14 times. He died from multiple stab wounds and blunt force trauma to his head. The police found the knife used in the killing in co-defendant Carl Myers's bedroom closet.

Before the murder, Hester told his friend Christina Pierce that he was going to beat up Hooks. He told his girlfriend Rachele Hollingsworth after the murder that he robbed Hooks because Hooks had treated his mother and aunt disrespectfully.[FN7] He also claimed that Hooks had tried to drug him and Hollingsworth so Hooks and another man could rape Hollingsworth.

The evening before Hooks's murder, Hester and Myers found him at a

pool hall. Myers left the pool hall and made arrangements to use the back room of a vacant house occupied by drug addict Robert Black for the robbery and assault. Later, Hester and Myers picked up Hooks from his apartment and took him to the drug house. Hester enlisted the aid of Charles Meredith, another denizen of the premises, to subdue Hooks in exchange for drugs. After Hooks was tied up and gagged, Hester and Myers beat and stabbed him. Then, they dragged Hooks's body to the garage and set the garage on fire.

> FN7. Hollingsworth was in Myers's car asleep when Hester and Myers killed Hooks.

Afterwards, they went to Christina Pierce's house and Hester told her what had happened. She unsuccessfully washed Hester's blood stained clothes and the clothes were ultimately thrown away in Pierce's apartment dumpster. Police arrested Hester and Myers two days later.

Response, Ex. 3, pp. 2-3.[1]

## Petitioner's Claims

Petitioner asserts seven grounds for relief in his federal habeas petition, all of which were raised in his direct appeal:

1. The trial court gave an improper non-OUJI instruction that created an impermissible presumption thereby violating Mr. Hester's right to Due Process and a fair trial under the federal and state constitutions and in violation of *Sandstrom v. Montana*.

2. Instructional errors, taken cumulatively with other trial errors, denied Mr. Hester his Sixth Amendment right to present a defense and his Fourteenth Amendment right to due process and a fundamentally fair trial.

---

[1]As noted by the OCCA and as reflected in the district court docket, Petitioner was charged conjointly with co-defendants Myers and Meredith, and their cases were severed for trial. Response, Ex. 3, p. 1 n.6. Myers was convicted by a jury on all five charged counts and co-defendant Meredith was acquitted by a jury of the five charged counts. *See* Oklahoma State Courts Network (OSCN), at http://www.oscn.net (*State v. Myers, et al.*, District Court of Oklahoma County, Case No. CF-2004-1564) (accessed October 14, 2010).

3. The State failed to prove by a preponderance of the evidence that a conspiracy existed to justify the admission of co-conspirator hearsay.

4. The trial court erred in admitting statements made by Ricky Hester to Rachele Hollingsworth that were protected by the spousal privilege violating Mr. Hester's due process rights under the federal and statement constitutions.

5. The admission of Rachele Hollingsworth's written statement under the "past recollection recorded" exception of the hearsay rule violated Mr. Hester's fundamental right to confront witnesses under the federal and state constitutions.

6. The State presented insufficient evidence to prove beyond a reasonable doubt the essential elements of arson, conspiracy, kidnapping and robbery with a dangerous weapon in violation of the due process clauses of the federal and state constitutions.

7. Trial errors, when considered in a cumulative fashion, warrant a new trial or a modification of Mr. Hester's sentence.

Petition, pp. 4-11. In support of each ground for relief, Petitioner "incorporates by reference the argument set forth in his Direct Appeal brief." Therefore, in setting out Petitioner's supporting arguments, the undersigned has referred to Petitioner's direct appeal brief which is attached to the response as Exhibit 1.

Respondent contends that Petitioner is not entitled to habeas relief in Grounds Two, Three, and Four, because the alleged jury instruction errors and evidentiary errors are matters of state law which are not cognizable in this habeas action because Petitioner has failed to show that such errors deprived him of a fundamentally fair trial. Response, p. 4. Respondent further contends that Petitioner's claims in the remaining grounds (Grounds One, Five, Six and Seven) do not merit habeas relief because he fails to show that the OCCA's resolution of the issues raised in these grounds was contrary to, or based upon an unreasonable

application of, clearly established federal law.  *Id.*

## ANALYSIS

### Standard Governing Habeas Review

Because the claims raised by Petitioner in this habeas action were adjudicated on the merits by the state courts, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) this Court may grant Petitioner habeas relief only if the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004).  Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning.  *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable.'") (citing *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

Whether federal law is clearly established is a threshold inquiry.  *See House v. Hatch*, 527 F.3d 1010, 1017-1018 (10th Cir. 2008), *cert denied*, 129 S.Ct. 1345 (2009).  The absence of clearly established federal law is dispositive of the § 2254(d)(1) analysis.  *Id.* at 1017. Thus, only if the court determines the law is clearly established does it proceed to determine whether the state court decision is either contrary to or an unreasonable application of that law.  *Id.* at 1018.

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in

5

[Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House*, 527 F.3d at 1019 (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, the AEDPA imposes a "highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, __U.S.__, 130 S.Ct. 1855, 1862 (2010). In conducting this deferential inquiry, the Court presumes that the state court factual findings are correct, and Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

## I.    **Jury Instructions - Grounds One and Two**

In Grounds One and Two of the petition, Petitioner asserts that his rights to due process and a fundamentally fair trial were violated by erroneous instructions given by the trial court to the jury. In Ground One, Petitioner claims that the trial court gave an non-uniform jury instruction that "created an impermissible presumption thereby violating [Petitioner's] right to Due Process and a fair trial under the federal and state constitutions and in violation of *Sandstrom v. Montana*." Petition, p. 4. Ground Two alleges that "instructional errors, taken cumulatively with other trial errors," violated Petitioner's constitutional rights. *Id.*, p. 5.

Errors relating to jury instructions in a state criminal trial are not reviewable in a federal habeas corpus action "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.32d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981)). As emphasized by the United States Supreme Court in *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977), "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("The question . . . is not whether the [challenged] instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process.") (internal quotations omitted). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). Further, "'a single

instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California*, 494 U.S. 370, 378 (1990) (quoting *Cupp*, 414 U.S. at 146-47).

### A. Instruction No. 16

In Ground One, Petitioner alleges that the trial court erred by giving a "non-OUJI" (Oklahoma Uniform Jury Instruction) instruction that violated his right to a jury determination of guilt on every element of the charged offense in violation of *Sandstrom v. Montana*, 442 U.S. 513 (1979). Petition, p. 4. On direct appeal Petitioner asserted that the challenged instruction, Instruction No. 16, set out hereafter, was cumulative to the uniform instructions on conspiracy:

> When a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said and done pursuant to the conspiracy by their co-conspirators until the purpose has been fully accomplished. If two or more persons conspire to combine to commit a felony, each is criminally responsible for the act of his associates and confederates in the furtherance of the common design, if the criminal act thoroughly results from the common enterprise, or where the connection between this is reasonably apparent.

Response, Ex. 1, p. 8 (citing O.R. I 179). Petitioner argued that this instruction, given over defense counsel's objection, "created an impermissible conclusive presumption that improperly relieved the State of the burden of proving that [Petitioner] was guilty of malice murder, separately and distinctly from the conspiracy." *Id.*, pp. 8-9.

Respondent contends that the challenged jury instruction neither mandated a particular factual finding nor shifted the burden of proof to Petitioner but "simply laid out the doctrine of co-conspirator liability." Response, p. 10. Respondent asserts that such instruction

therefore did not deprive Petitioner of a fundamentally fair trial. *Id.*

In reviewing Petitioner's claim for plain error,[2] the OCCA began its analysis by stating "[i]t is fundamental to our system of justice that, before a conviction can be had, the State must prove, beyond a reasonable doubt, the facts comprising every element of the offense." Response, Ex. 3, p. 3 (citing *In re Winship*, 397 U.S. 358 (1970)). The OCCA recognized that "[i]nstructions which force the jury to presume a particular result from a certain set of facts can violate due process, if doing so invades the jury's province of considering the sufficiency of the evidence as to each particular element of the offense." *Id.*, pp. 3-4 (citing *Sandstrom v. Montana*, 442 U.S. 510 (1979)[3]). The Court set forth the following facts as relevant to Petitioner's claim:

> The jury was correctly instructed that all persons who either commit acts

_____

[2]The OCCA found that Petitioner objected to the instruction at trial on different grounds than on direct appeal, and thus the court reviewed such claim only for plain error. Response, Ex. 3, p. 3. The Tenth Circuit Court of Appeals has found "no practical distinction" between the formulation of plain error used by the OCCA and the federal due process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 75 (1991)).

[3]In *Sandstrom*, the Supreme Court found an impermissible mandatory presumption in a jury instruction which stated that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom*, 442 U.S. at 513. That instruction, the Court concluded, could have been read by the jury as relieving the prosecution of its burden of proving that the defendant "purposefully or knowingly" caused the death of the victim. The Court found that a reasonable jury could have interpreted the presumption as conclusive – "an irrebuttable direction by the court to find intent once convinced of facts triggering the presumption." *Id.* at 517. Alternatively, the jury may have read the instruction as a directive to find intent, unless the defendant proved the contrary by some evidence, "thus effectively shifting the burden of persuasion on the element of intent." *Id.*

> constituting a crime, or who knowingly, and with criminal intent, aid and abet
> in the commission of the crime, are equally guilty as principals. The jury was
> further instructed that before it could find [Petitioner] guilty of first degree
> murder with malice aforethought it first had to find that [Petitioner] caused
> Hooks's death unlawfully and with malice aforethought.

*Id.*, p. 4 (citing Okla. Stat. tit. 21, § 701.1(A) and OUJI-Criminal (2d ed.) Nos. 4-61, 4-62,

and 4-63). The Court also found that the jury had been provided with "instructions on the

elements of robbery with a dangerous weapon and conspiracy to commit robbery with a

dangerous weapon," and concluded that "[t]he State's evidence, if believed, clearly showed

that [Petitioner] not only planned the robbery, but that he actively took part in the execution

of that plan and participated in the beating and stabbing of Hooks that resulted in his death."

*Id.* Recognizing that the challenged instruction was not taken from the uniform jury

instructions, the OCCA determined that the instruction "was an accurate statement of the

law" concerning co-conspirator liability. *Id.*, p. 5 (citing *Hatch v. State*, 662 P.2d 1377,

1382 (Okla. Crim. App. 1983) and *Fox v. State*, 524 P.2d 60, 62 (Okla. Crim. App. 1974)).

The Court found that the instruction "did not require the jury to presume any fact from the

existence of any other fact," "[n]or did it place the burden on [Petitioner] to disprove any

particular fact." *Id.*, pp. 4-5. Rather, "[t]he instruction simply stated the law of co-

conspirator liability, applicable *only if* the jury were to find that [Petitioner] was a member

of the alleged conspiracy - *if*, indeed the jury found any such conspiracy existed at all." *Id.*,

p. 5. The Court determined that "the jury was not instructed that any particular *fact* was

presumed to indicate a conspiracy, or to render [Petitioner] a member of it;" in fact, "[e]very

fact necessary to determine every element of the offense of conspiracy was left to the jury

to determine." *Id.* In conclusion, the OCCA found that based on the evidence presented and the instructions given, "no rational trier of fact could have concluded that [Petitioner] was a member of the conspiracy to rob Hooks, but was not *also* a principle in Hook's murder." *Id.*, p. 6.

"[I]t is not enough that there is some 'slight possibility' that the jury misapplied the instruction . . . ." *Waddington v. Sarausad*, __U.S.__, 129 S.Ct. 823, 832 (2009) (quoting *Weeks v. Angelone*, 528 U.S. 225, 236 (2000)). Rather, "the pertinent question is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Estelle v. McGuire*, 502 U.S. at 72). Applying this highly deferential standard of review, the undersigned finds that Petitioner has failed to show that the challenged instruction violated his right to due process so as to render his trial fundamentally unfair. Petitioner does not dispute that the trial court issued instructions setting out the elements of each offense,[4] nor does he dispute that the jury was instructed that the burden of proving guilt beyond a reasonable doubt rested on the State at all times. The undersigned further finds that the challenged instruction cannot be read to create a mandatory inference or presumption of guilt. Rather, the instruction is couched in permissive language allowing the jury to determine whether a conspiracy existed and whether the alleged criminal

---

[4]Although the jury instructions have not been included in the record, the OCCA found that the jury had been correctly instructed on the elements of the charged offenses, Response, Ex. 3, p. 4, and these factual findings regarding the instructions issued are presumed to be correct since Petitioner has not rebutted such findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

act thoroughly resulted from the common enterprise or the connection between the them was reasonably apparent. Such language neither compels a finding of guilt nor relieves the State of its burden of proof. Moreover, contrary to Petitioner's argument that the challenged instruction allowed the jury to find Petitioner guilty of felony murder based upon his participation in the conspiracy to commit a robbery rather than upon his participation in the robbery itself, the OCCA correctly noted that "[o]n the evidence presented and instructions given, no rational trier of fact could have concluded that [Petitioner] was a member of the conspiracy to rob Hooks, but was not *also* a principal in Hooks's murder." Response, Ex. 3, pp. 5-6.[5] As discussed *infra* in connection with Petitioner's sufficiency of the evidence claim, substantial, uncontroverted evidence of Petitioner's participation in the robbery and the murder was presented at trial. Under these circumstances, the undersigned finds that the challenged instruction did not render Petitioner's trial fundamentally unfair or amount to a deprivation of due process. Thus, the OCCA's decision on this issue did not result in a decision that was contrary to or involve an unreasonable application of, clearly established federal law as determined by the Supreme Court, or result in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceedings. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Omission of Instructions

---

[5]As the OCCA concluded, even if a *Sandstrom*-type error were found in this instruction, the error would be "harmless beyond a reasonable doubt, based on evidence that [Petitioner] was an active participant in the robbery and murder." Response, Ex. 3, p. 6 n.8.

In Ground Two, Petitioner alleges that "[i]nstructional errors" violated his right to present a defense and his Fourteenth Amendment right to due process and a fundamentally fair trial. Petition, p. 5. On direct appeal, Petitioner more specifically argued that the trial court should have issued *sua sponte* instructions concerning corroboration of a confession and corroboration of accomplice testimony. Response, Ex. 1, pp. 16-18.

### 1. Instruction on Corroboration of Confession

Petitioner alleges that the jury should have been instructed that it must find Petitioner's confessions to Rachele Hollingsworth and Christina Pierce corroborated by other evidence before considering his statements to these witnesses. Response, Ex. 1, p. 16.

Respondent contends that although Petitioner attempts to frame this claim as a federal one, it is clearly based upon state law. Response, p. 13. Respondent further contends that there is no clearly established federal law on the issue of whether the jury must be instructed on the issue of corroboration of a defendant's confession, and therefore this Court's review should be limited to whether the omission of such instruction rendered Petitioner's trial fundamentally unfair. *Id.*, pp. 14-15.

Noting that Petitioner failed to request an instruction on confession corroboration at trial, the OCCA held on direct appeal that no plain error resulted from the trial court's failure to instruct the jury on the need for independent corroboration. Response, Ex. 3, pp. 6-7. In doing so, the OCCA pointed out that under Oklahoma law the failure to instruct on the necessity of corroboration of a defendant's confession is harmless when the defendant's confession was made voluntarily and it is corroborated by other evidence. *Id.*, p. 6 (citing

13

*Jones v. State*, 128 P.3d 521, 528-39 (Okla. Crim. App. 2006)). Applying state law, the

OCCA found that "the evidence was clear and uncontroverted that [Petitioner's] admissions

to Hollingsworth and Pierce were voluntary. His confessions were also corroborated by

other evidence introduced at trial." *Id.*, p. 7.

Petitioner fails to cite any clearly established Supreme Court authority holding that

a state court must instruct the jury on the requirement that a confession be independently

corroborated.[6] As previously discussed, state law errors are not sufficient to warrant federal

habeas relief. *See, e.g., Estelle v. McGuire*, 502 U.S. at 67-68, 70. Rather, to obtain habeas

relief on his claim of erroneous jury instructions, Petitioner must show that instructions were

"so fundamentally unfair as to deprive [him] of a fair trial and to due process of law."

*Nguyen v. Reynolds*, 131 F.3d at 1357. Moreover, "[a]n omission, or an incomplete

instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v.*

*Kibbe*, 431 U.S. 145, 155 (1977).

Petitioner makes no attempt to show how the OCCA's determination regarding the

voluntariness of his confessions and the corroboration of his statements by other evidence

---

[6]Petitioner's attempt to show that his jury instruction claim is supported by federal law, specifically, *Opper v. United States*, 328 U.S. 84 (1954), fails. *See* Petition, p. 5. As discussed by Respondent, in *Opper* the United States Supreme Court held that a criminal conviction cannot be sustained when the offense is proven solely by the uncorroborated extra-judicial confessions or admissions of the accused. *Opper*, 328 U.S. at 90-94. The undersigned agrees with Respondent that *Opper* did not address the issue of instructing the jury that a defendant's confession must be corroborated. *See* Response, p. 14. Thus, the undersigned finds that Petitioner's reliance on *Opper* as the clearly established federal law relating to his state law based jury instruction claim is misplaced.

resulted in a denial of fundamental fairness. In any event, as discussed *infra*, there was other substantial evidence of Petitioner's guilt which corroborated his confessions. Therefore, the undersigned finds that the OCCA's rejection of this claim was not contrary to, or an unreasonable application of, Supreme Court due process jurisprudence. Accordingly, Petitioner is not entitled to habeas relief on his claim regarding the omission of an instruction on corroboration of confession.

### 2. Instructions on Corroboration of Accomplices

Petitioner also contends that the trial court failed to issue instructions requiring corroboration of the testimony of Christina Pierce and Robert Black as accomplices to the crimes that took place on March 4, 2004. Response, Ex. 1, p. 17-18 (citing OUJI-Criminal (2d ed.) Nos. 9-26 thru 9-28, 9-29 thru 9-30).

Christina Pierce testified that Petitioner told her he hit Mr. Hooks in the head with the gun, shot him twice, stabbed him twice, thrust part of a chair leg in his mouth, and poured gasoline on Hooks and burned him. Tr.Vol.II, pp. 128-131. According to Petitioner, Christina Pierce's act of washing Petitioner's blood-stained clothing and helping dispose of them made her an accomplice to the crime and therefore under state law, the jury should have been instructed that her testimony must be corroborated with other evidence before her testimony could be believed. Response, Ex. 1, p. 17.

The OCCA determined that under Oklahoma law, Pierce was not an accomplice. Response, Ex. 3, p. 7. Specifically, the Court found that Pierce "was not a party to the conspiracy to rob Hooks and she neither aided nor abetted [Petitioner] in the robbery, murder

and arson." *Id.* The OCCA further determined that under Oklahoma law, Pierce's action of washing his clothes and disposing of them after the murder "d[id] not make her an accomplice, but rather an accessory after the fact. Corroboration is not required for the testimony of an accessory." *Id.* (citing *Pink v. State*, 104 P.3d 584, 599 (Okla. Crim. App. 2004)).

The OCCA's conclusion that under an application of Oklahoma law to the facts of the case, Pierce acted as an accessory after the fact rather than as an accomplice is an interpretation of state law that is binding on this court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Parker v. Scott*, 394 F.3d 1302, 1318-19 (10th Cir. 2005) (rejecting a habeas claim involving error in jury instructions because the state courts' interpretation of state law is binding). In any event, Petitioner makes no effort to show how the omission of an accomplice instruction concerning Pierce's testimony rendered his trial fundamentally unfair. Thus, Petitioner has not shown that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, Supreme Court jurisprudence. Accordingly, Petitioner is not entitled to federal habeas relief concerning this claim.

Petitioner also contends that the trial court should have instructed the jury to determine whether Robert Black was an accomplice. Response, Ex. 1, pp. 17-18. On direct appeal the OCCA conducted a plain error review and concluded that Petitioner was not entitled to relief on this jury instruction claim because any error in the omission of an accomplice instruction with respect to Black was harmless:

> Assuming, arguendo, that Black was an accomplice, his testimony was sufficiently corroborated. Statements made by [Petitioner] corroborated Black's testimony. The physical evidence also corroborated Black's testimony and [Petitioner's] DNA was found on a cigarette butt not far from where Hooks was beaten and stabbed.

Response, Ex. 3, p. 8.

Although Petitioner attempts to couch his claim in terms of a constitutional violation, he fails to cite any Supreme Court decisions establishing a constitutional mandate for an accomplice corroboration instruction. In fact, "there is no constitutional requirement that the testimony of an accomplice be corroborated by independent evidence." *Cummings v. Sirmons*, 506 F.3d 1211, 1241 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 2943 (2008). *See also Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir.1999) (finding that despite Oklahoma law requiring corroboration of accomplice's testimony, there was no such constitutional requirement to support federal habeas claim); *Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995) ("The Constitution does not prohibit convictions based primarily on accomplice testimony.").

Therefore, Petitioner must show that "in the context of the entire trial, the failure to instruct the jury to carefully consider [the witness's] credibility as an accomplice 'had the effect of rendering the trial so fundamentally unfair as to cause denial of a fair trial.'" *Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999) (citation omitted). He fails to satisfy this standard. Petitioner's defense counsel thoroughly cross-examined Robert Black. Mr. Black's testimony that Petitioner was an active participant in the events on March 4, 2004, was credible and consistent with other direct and circumstantial evidence presented at the

trial.[7] Based on the presumptively correct factual findings made by the OCCA with respect to the evidence admitted at trial and the evidence described *infra* in connection with Petitioner's claims of insufficient evidence, the undersigned finds that Petitioner has not shown that his trial was rendered fundamentally unfair by the omission of an accomplice instruction. Therefore, Petitioner has failed to show that the OCCA's rejection of his claim regarding the omission of an accomplice instruction was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief concerning this issue.

## II.    State Court Evidentiary Rulings - Grounds Three, Four and Five

Petitioner's next three grounds for relief challenge the use and/or admission of certain evidence at trial. In Ground Three, Petitioner alleges that there was insufficient evidence of a conspiracy, and therefore, statements made by co-defendant Myers were improperly admitted as evidence. Petition, p. 7. In Ground Four, Petitioner contends that the statements made by Rachele Hollingsworth were improperly admitted in violation of Oklahoma's law regarding spousal privilege. Petition, p. 8. In Ground Five, Petitioner challenges the admission of Hollingsworth's written statement to police. Petition, p. 9

As discussed with respect to Petitioner's previous claims based on alleged state law errors, federal habeas corpus relief does not lie to review state law questions about the

_____

[7]As set out by the OCCA and as discussed *infra*, Black's testimony was corroborated by Petitioner's own statements to Hollingsworth and Pierce, as well as Pierce's testimony that she washed Petitioner's blood-stained clothing on the night of the murder.

admissibility of evidence. *See Estelle v. McGuire*, 502 U.S. at 67-68; *see also Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief."). This Court can only review state court evidentiary rulings "'to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997)). In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary and capricious as to constitute an independent due process violation. *Fields v. Gibson*, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Thus, Petitioner's burden is a heavy one; he must show that the state's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience. *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir. 1999). "Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and brackets omitted). The "[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . [and] [a]ny cautionary steps-such as instructions to the jury-offered by the court . . . ." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citation omitted).

### A. Admission of Co-Conspirator Statements - Ground Three

Petitioner alleges that the State failed to prove that a conspiracy existed such that the admission of co-conspirator hearsay was admissible under Oklahoma evidentiary law. Petition, p. 7 (citing Okla. Stat. tit. 12, § 2801(4)(b)(5)). He further asserts that the state courts' decisions to the contrary are in violation of the Supreme Court's ruling in *Bourjaily v. United States*, 483 U.S. 171 (1987). *Id.* On direct appeal Petitioner argued that the trial court improperly found that a conspiracy existed between Petitioner and Myers and therefore erred in admitting co-defendant Myers's statements to Robert Black. Response, Ex. 1, p. 20.

Black testified that on the evening of March 3, 2004, Myers asked him to use the back room of his house to slap someone around and to take money and "dope" and that Myers stated that he and Petitioner would be bringing "some black fellow" back with them. Tr.Vol.I, pp. 145-149. Black further testified that Petitioner and Myers returned to the house about an hour later and that Myers stated three of them were headed to the back room through a back door. Tr.Vol.I, pp. 150-52.[8] Petitioner contends that the admission of Black's testimony in this regard prejudiced him because "it is the only evidence that connects [Petitioner] to the planning of an attack against Mr. Hooks prior to the actual crime." Response, Ex. 1, p. 20.

In rejecting this claim, the OCCA first recognized that the parties agreed that the trial court's ruling would be based on the preliminary hearing transcripts and a "previous trial."

_____

[8]Black also testified that Petitioner came into the living room and retrieved a piece of rope, that Petitioner later returned to the living room and offered Meredith "some stuff" (marijuana and methamphetamine) to go to the back room and "I guess hit this fellow and stuff something in his mouth to shut him up." Tr.Vol.I, pp. 153-58.

Response, Ex. 3, pp. 8-9.  The OCCA found that the trial court did not err in concluding that

a conspiracy existed between Myers and Petitioner nor in admitting Myers's statements to

Black. The court based this conclusion on the following findings:

> Anna Franklin, Hooks's girlfriend, testified that [Petitioner] and Myers came to her apartment and convinced Hooks to go with them the night of his death and she never saw him again.  Hollingsworth remembered [Petitioner] and Hooks getting in the car with her and Myers as she drifted in and out of consciousness.  She also testified about [Petitioner's] statements to her after the murder about his plan and motives for robbing Hooks.  Black's testimony about his personal observations the night of Hooks's death, without Myers's statements, provided further support that a conspiracy existed.  Black testified that Myers and [Petitioner] brought a man (Hooks) to the back room of the house.  Both Myers and [Petitioner] went back and forth from the back room to the front room.  On one occasion, [Petitioner] cut a piece of cord or rope that was in the front bedroom.  On another occasion, he enlisted the aid of Charles Meredith to subdue the man.  Black heard scuffling and the man asking [Petitioner] and Myers, why they were doing this to him.

Response, Ex. 3, p. 9.  Pursuant to 28 U.S.C. § 2254(e)(1), the unrebutted determinations of

fact by the OCCA are presumed correct.  *See Toles v. Gibson*, 269 F.3d 1167, 1182 (10th Cir.

2001).

Petitioner has not alleged nor does the record support a conclusion that the state court

error of which he complains "'deprived him of fundamental rights guaranteed by the

Constitution of the United States.'"  *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998)

(citation omitted).  Under both federal law and Oklahoma law, a statement which is offered

against a party and made by his co-conspirator during the course and in furtherance of their

conspiracy is admissible and is not hearsay.  *Bourjaily v. United States*, 483 U.S. 171, 181

(1987); *Omalza v. State*, 911 P.2d 286, 295-96 (Okla. Crim. App. 1995).  Here, Petitioner

fails to show how he was prejudiced by the admission of Myers's statements to Black. As detailed by the OCCA and as discussed *infra*, sufficient evidence was presented that a conspiracy existed on the night of the robbery and murder and that Petitioner participated in that conspiracy. Moreover, the challenged testimony by Black involved statements which furthered the conspiracy and which were within the duration and objectives of the conspiracy. As a result, the undersigned finds that Petitioner has failed to show that the admission of Black's testimony regarding Myers's statements rendered the trial fundamentally unfair. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to or an unreasonable application of federal law as determined by the Supreme Court. Accordingly, Petitioner is not entitled to habeas relief on Ground Three.

### B.  Admission of Rachele Hollingsworth's Statements  - Ground Four

In Ground Four Petitioner contends that the trial court erred by admitting statements made by Petitioner to Rachele Hollingsworth, arguing that the statements in question were protected by Oklahoma's spousal privilege. Petition, p. 8. At the preliminary hearing, Hollingsworth testified inconsistently as to her status as Petitioner's girlfriend, fiancee, or wife. P.H.Vol.II, pp. 168-84. Hollingsworth's trial testimony included her description of her status as Petitioner's girlfriend. Tr.Vol.I, pp. 70-71; 114-15. Other witnesses described their relationship as boyfriend and girlfriend. Tr.Vol.I, pp. 56-57; Tr.Vol.II, pp. 113, 121. On direct appeal, Petitioner argued that  Hollingsworth's testimony as to what Petitioner told her about the robbery and murder of Hooks should have been excluded at trial under state law. Response, Ex. 1, pp. 21-22.

Under Oklahoma law, the marital privilege, set forth at 12 O.S.2001, § 2504, applies equally to common law and ceremonial marriages.[9] *Davis v. State*, 103 P.3d 70, 82 (Okla. Crim. App. 2004) (citation omitted). To take advantage of the marital privilege to exclude evidence, a defendant must prove, by clear and convincing evidence, the existence of a valid marriage. *Id.* To establish a valid common law marriage, there must be evidence of an actual mutual agreement between the spouses to be husband and wife, a permanent relationship, an exclusive relationship-proved by cohabitation as man and wife, and the parties to the marriage must hold themselves out publicly as man and wife. *Id.*

The OCCA upheld the trial court's rejection of Petitioner's claim of spousal privilege

---

[9]The spousal privilege precludes a spouse from testifying in a criminal proceeding as to any confidential communication between the accused and the spouse. Section 2504 provides:

> A. A communication is confidential for purposes of this section if it is made privately by any person to the person's spouse and is not intended for disclosure to any other person.
> B. An accused in a criminal proceeding has a privilege to prevent the spouse of the accused from testifying as to any confidential communication between the accused and the spouse.
> C. The privilege may be claimed by the accused or by the spouse on behalf of the accused. The authority of the spouse to do so is presumed.
> D. There is no privilege under this section in a proceeding in which one spouse is charged with a crime against the person or property of:
>> 1. The other;
>> 2. A child of either;
>> 3. A person residing in the household of either; or
>> 4. A third person when the crime is committed in the course of committing a crime against any other person named in this section.

Okla. Stat. tit. 12, § 2504.

and found the admission of Hollingsworth's testimony was supported by the record:

> At trial, Hollingsworth testified that she was in a dating relationship with [Petitioner] until he was arrested. Other witnesses (Anna Franklin, Jodie Pierce and Christina Pierce) confirmed that [Petitioner] and Hollingsworth were in a dating relationship and referred to them as boyfriend and girlfriend.

Response, Ex. 3, p. 10.

The OCCA based its decision on this issue entirely on state evidentiary rules. Thus, the undersigned finds that such claim does not meet the requirements of 28 U.S.C. § 2254(d)(1).[10] Moreover, Petitioner has failed to show that the admission of Hollingsworth's testimony deprived him of a fundamentally fair trial. According, Petitioner is not entitled to habeas relief on Ground Four.

### C. **Admission of Witness's Written Statement - Ground Five**

In Ground Five Petitioner contends as on direct appeal that the admission of Rachele Hollingsworth's written statement under the past recollection recorded exception of the hearsay rule violated Petitioner's fundamental right to confront witnesses. Petition, p. 9. At trial Hollingsworth testified that she could not remember the circumstances surrounding her interview with Detective Randy Kirby and the statements she gave Kirby, which included

---

[10]Petitioner contends that the state court's decisions were contrary to the holdings in *Trammel v. United States*, 445 U.S. 40 (1980). In *Trammel*, a federal criminal case, the Supreme Court held that pursuant to federal criminal procedure the co-conspirator wife's testimony was voluntary despite a grant of immunity and assurances of lenient treatment. *Trammel*, 445 U.S. at 42. In contrast, in the instant case the OCCA applied state law and determined that record supported the trial court's rejection of Petitioner's claim of spousal privilege. Petitioner's reliance on *Trammel* to show that the OCCA's decision was contrary to relevant federal law is without merit.

statements Petitioner made to her regarding what happened to Hooks the night of his murder. Tr.Vol.I, pp. 103-05.[11]  Over defense counsel's objection, the trial court admitted the statements under the past recollection recorded exception to  hearsay testimony, Okla. Stat. tit. 12, § 2803(5), and Hollingsworth's statements were read to the jury.  Tr.Vol.I, p. 111-12.

On direct appeal Petitioner argued that the admission of the statements violated *Crawford v. Washington*, 541 U.S. 36 (2004) since Hollingsworth was unable to remember the circumstances surrounding the admissions made by Petitioner and could not remember making her statements to Detective Kirby, thus rendering her "unavailable" for purposes of confrontation and meaningful cross-examination.  Response, Ex. 1, pp. 23-27.  According to Petitioner, there was no meaningful adversarial testing of Hollingsworth's statements because she "did not have enough memory of the events to affirm, deny or qualify" her statements regarding what Petitioner told her.  *Id.*, p. 27.

In rejecting this claim, the OCCA recognized that under *Crawford*, the Confrontation Clause bars the admission of testimonial hearsay unless (1) the declarant testified at trial or (2) the declarant is unavailable to testify and was previously subject to cross-examination concerning the statement.  Response, Ex. 3, p. 11 (citing *Crawford*, 541 U.S. at 59). However, the court found there was no violation of *Crawford* based on the following reasoning:

> There was no Confrontation Clause violation here because Hollingsworth

---

[11]Hollingsworth wrote a portion of her statements, and Detective Kirby wrote a portion of her statements as stated to him during the interview.  Tr.Vol.I, p. 109.

testified at trial. She acknowledged that the interview was videotaped and that she had watched the interview, but persisted that she did not remember anything about the interview or of what [Petitioner] had told her. She admitted that she told the detective the truth about the things that were contained in the statement at the time of the interview and that the detective's handwritten notes on her statement were based on her answers.

*Id.*, pp. 11-12. In addition to the evidence set out above, the OCCA also noted that "[o]n cross-examination defense counsel was able to attack Hollingsworth's lack of memory and credibility. He questioned Hollingsworth about her drug use prior to the interview and her feelings of fear during the interview." *Id.*, p. 12. The Court found that the "jury had the relevant information to consider" and further, the trial court followed the proper procedure in admitting Hollingsworth's statement under Okla. Stat. tit. 12, § 2803. *Id.*

The record shows that Petitioner's confrontation rights were not violated. *Crawford* made clear that, when the declarant appears for cross-examination at trial, the Confrontation Clause does not bar admission of a prior out of court statement "so long as the defendant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9. Hollingsworth testified as to her personal knowledge of the events that occurred on the night of Hooks's murder and, as the OCCA found, Hollingsworth testified that her statement was correct and truthful at the time it was given. Tr.Vol.I, pp. 103, 132. Defense counsel's vigorous cross-examination elicited testimony about Hollingsworth's use of drugs on the night in question and her lack of sleep over the previous several days. Tr.Vol.I, pp. 120-21. In this case, the declarant testified at trial and was available for cross-examination and the jury was able to observe the declarant's demeanor. The OCCA's determination of this issue is not contrary

to or an unreasonable application of federal law a s determined by the Supreme Court. Accordingly, Petitioner is not entitled to habeas relief on Ground Five.

## III.    Sufficiency of the Evidence - Ground Six

In his sixth ground for relief, Petitioner contends that the evidence was insufficient to support his convictions.   Petitioner again refers the Court to his direct appeal brief, where he challenged his convictions of first degree arson, first degree robbery, conspiracy to commit robbery with a dangerous weapon and kidnapping.   Petition, p. 10; Response, Ex. 1, pp. 27-33.

Before addressing the merits of Petitioner's claims, the undersigned first notes that the OCCA reversed Petitioner's conviction for kidnapping for insufficiency of the evidence, reasoning that there was insufficient evidence that Petitioner "forcibly seized and confined" the victim.  Response, Ex. 3, pp. 14-15.  Thus, to the extent Petitioner raises a challenge to the kidnapping conviction, such claim is moot.  "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir.1998).  The requirement that a petition present a "case or controversy" means that the plaintiff must have suffered an actual injury which can "'be redressed by a favorable judicial decision.'"  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citation omitted).   In this case, the OCCA has already acknowledged the error claimed herein with regard to the kidnapping conviction and has taken corrective action.  There is nothing more which can be redressed by a favorable decision herein.  It is therefore recommended that relief be denied as moot with regard to Petitioner's challenge to the

sufficiency of the evidence as to a conviction of kidnaping (Count Five).

The "clearly established federal law" applicable to a sufficiency of the evidence claim is set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, (1979), in which the Supreme Court held that, in evaluating the constitutional sufficiency of evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F. 3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). Because the OCCA applied the *Jackson* standard in deciding Petitioner's sufficiency of the evidence claims on direct appeal,[12] this Court's review is limited by the AEDPA to inquiring whether the OCCA's application of

_____

[12]The OCCA cited *Jackson v. Virginia* and its decision in *Coddington v. State*, 142 P.3d 437, 455 (Okla. Crim. App. 2006) in which the court stated the standard for reviewing claims of insufficient evidence to support convictions is whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Response, Ex. 3, p. 12.

*Jackson* was unreasonable. *See Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008). In determining whether OCCA was reasonable in applying the *Jackson* standard to the facts of Petitioner's case, the Court must begin with Oklahoma law defining the substantive elements of the crime. *Jackson*, 443 U.S. at 309, 324 n.16.

## A. First Degree Arson

Petitioner argues that the State failed to present sufficient evidence connecting him to the setting of the fire to the garage where Mr. Hook's body was found. Ex. 1, p. 29.

In considering this proposition on direct appeal the OCCA stated:

> [Petitioner] overlooks his statements to both Rachele Hollingsworth and Christina Pierce, admitting to setting fire to the garage and burning Hooks's body. Hester and Myers were the last two individuals with Hooks at the house.

Response, Ex. 3, pp. 12-13.

Under Oklahoma law, the elements of first degree arson are: (1) a willful and malicious; (2) setting fire to; (3) a building; (4) which was inhabited or occupied by one or more persons; (5) caused by the defendant. Okla. Stat. tit. 21, § 1401. *See also* OUJI-Criminal (2d ed.) No. 5-2.

The fire investigator testified that during his investigation of the burned detached garage he found an oily sheen on the surface of the water around the body, indicative of an ignitable liquid, and he further noticed a detectable odor of gasoline in the area. Tr.Vol.I, pp. 216-18. Rachele Hollingsworth testified that Petitioner described the stabbing of Mr. Hooks by Petitioner and Myers, and he further stated that the two men dragged Hooks, who was

29

"bubbling and gurgling, at the time" to the place where they burned him. Tr.Vol.I, pp. 112-13.[13] Additionally, Christina Pierce testified that Petitioner informed her that he poured gasoline on Hooks and had burned the body. Tr.Vol.II, pp. 128, 130-31. Further, Robert Black testified that he, his friend Lisa, and Ray Meredith decided to leave the home at 2825 S.W. 30th St., leaving Petitioner and Myers in the back of the house, where they had heard a struggle going on with another person. Tr.Vol.I, pp. 160-61.

The undersigned finds that such evidence, viewed in the light most favorable to the prosecution, is sufficient to allow a rational jury to find Petitioner guilty beyond a reasonable doubt of first degree arson.

### B. Conspiracy

Petitioner argues that there was insufficient evidence supporting his conviction of conspiracy because the State failed to prove an agreement existed between Petitioner and Myers to commit a robbery with a dangerous weapon. Response, Ex. 1, p. 31. He contends that the only testimony relevant to the conspiracy charge was the testimony by Robert Black that Myers had stated that he and Petitioner requested the use of the back room of his house so they could "slap someone around" and "take the money." *Id.*, p. 32 (citing Tr.Vol.I, p. 147). Petitioner asserts that because Black was an accomplice to the crime, his corroborated testimony could not support the conspiracy conviction. *Id.* He argues that Black's testimony

---

[13]These statements were made by Hollingsworth to Detective Kirby who recorded the statements, and the trial judge allowed the statements to be read into the record by Hollingsworth as a past recollection recorded. Tr.Vol.I, pp. 103-07.

was further undermined because there was no evidence that money was taken.  *Id.*

Under Oklahoma law, a conspiracy to commit robbery with a dangerous weapon requires proof of an agreement by two or more persons to commit robbery with a dangerous weapon and an overt act by one or more of the parties performed subsequent to the formation of the agreement in furtherance of the agreement.  *Jones v. State*, 965 P.2d 385, 386 (Okla. Crim. App. 1998); *see also* OUJI-Criminal (2d ed.) No. 2-17.  "A conspiracy may be proved by circumstantial evidence from which its existence may be fairly inferred."  *McGee v. State*, 127 P.3d 1147, 1149 (Okla. Crim. App. 2005).

The OCCA made the following findings when rejecting this claim:

> Black testified that Myers came to the house and asked if he and [Petitioner] could use the back room to rob and assault a black man.  He returned a short time later with Hooks and [Petitioner].  [Petitioner] asked Meredith to tie up and gag Hooks and Black heard a scuffle and Hooks asking why they were doing this to him. [] Black's testimony was corroborated by [Petitioner's] own statements and other evidence.

Response, Ex. 3, p. 14.

Petitioner has not rebutted the facts as summarized by the OCCA and thus, Petitioner has not demonstrated the OCCA's findings constitute an unreasonable application of the standard in *Jackson*, *supra*.

### C.  Robbery with a Dangerous Weapon

Petitioner argues that his conviction for robbery with a dangerous weapon is supported by insufficient evidence because the State failed to prove that he took any property from

Hooks prior to his death as required by Oklahoma law.  Ex. 1, p. 30.

In rejecting this claim, the OCCA set forth the following evidence that was presented at trial:

> The evidence showed that [Petitioner] and Myers planned to rob Hooks of his drugs, money, and gun.  They lured him to the drug house to carry out their plan.  Hollingsworth testified that neither she nor [Petitioner] had any drugs with them that evening.  Black testified that Hester offered Meredith methamphetamine and marijuana to tie up and gag Hooks.

Response, Ex. 3, p. 13.  Based on this evidence, the OCCA concluded that it was "fair to infer from the evidence that [Petitioner] and Myers took the drugs from Hooks at knife point and then enlisted Meredith to help restrain him, paying Meredith with some of the drugs they took from Hooks."  *Id.*  The Court further noted that "[Petitioner] also told Christina Pierce that the drugs he brought to her house were taken from Hooks."  *Id.*

In Oklahoma, a person commits robbery with a firearm when he  1) wrongfully, 2) takes, 3) the personal property of another, from another, 4) by force or fear, 7) through the use of a dangerous weapon.  *Cummings v. Evans*, 161 F.3d 610, 614 n.1 (10th Cir. 1998) (citing Okla. Stat. tit. 21 §§ 791, 801). *See also* OUJI-Criminal (2d ed.) No. 4-144.  A gun is a "dangerous weapon." *See* OUJI-Criminal (2d ed.) No. 4-28.  "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals and are equally culpable with other princip[al]s." *Williams v. State*, 188 P.3d 208, 226 (Okla. Crim. App. 2008); Okla. Stat. tit. 21, § 172.

After viewing the evidence in the light most favorable to the prosecution, the

undersigned finds that any rational trier of fact could have found all of the essential elements of the crime of robbery with a dangerous weapon. Under the *Jackson* standard, the trier of fact has full responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. The evidence noted by the OCCA in its opinion on direct appeal – which must be viewed in the light most favorable to the prosecution – certainly supports a reasonable inference that Petitioner and Myers initiated and completed a plan to take Hooks's drugs, money and gun and that during the course of the robbery Petitioner hit Hooks in the head with Hooks' own gun, while he was still alive. Rather than repeat the same evidence summarized by the OCCA on direct appeal, the undersigned notes the location of that evidence in the trial transcripts. *See* Tr.Vol.I, pp. 108-09, 124, 128-34, 146-49. Based on the record, the undersigned agrees that this evidence could lead a rational juror to conclude that Petitioner was guilty of robbery with a dangerous weapon.

## Conclusion

To summarize, the undersigned agrees with the OCCA that the evidence presented at trial, viewed in the light most favorable to the prosecution was sufficient to support the jury's guilty verdicts on the charges of first degree murder (Count One), first degree arson (Count Two), conspiracy (Count Three), and robbery with a dangerous weapon (Count Four). Therefore, the OCCA's rejection of Petitioner's sufficiency of the evidence claims in this regard was neither contrary to nor an unreasonable application of the *Jackson v. Virginia*, *supra*. Accordingly, Petitioner is not entitled to habeas relief based on his challenge to the

sufficiency of the evidence supporting his convictions in Counts One, Two, Three and Four.

Further, as previously discussed, because of the OCCA's decision reversing the conviction

for kidnapping, it is recommended that relief be denied as moot with regard to Petitioner's

sufficiency of the evidence claim related to his conviction of kidnapping (Count Five).

## IV.   **Cumulative Error - Ground Seven**

As in his direct appeal, Petitioner alleges that cumulative error deprived him of a fair

trial.  Petition, p. 11; Response, Ex. 1, p. 34.  On direct appeal the OCCA found error with

respect to Case No. CF-2004-1564, and Petitioner's conviction of kidnapping (Count Five)

was reversed for failure to prove the elements of that crime.  In reviewing the alleged

cumulative nature of trial errors the OCCA found that despite the reversal of Petitioner's

kidnapping conviction, "[a]ll other errors, even when considered together, did not deny

[Petitioner] of a fair trial."  Response, Ex. 3, p. 16.

In the federal habeas context, "'[a] cumulative-error analysis aggregates all errors

found to be harmless and analyzes whether their cumulative effect on the outcome of the trial

is such that collectively they can no longer be determined to be harmless." *Brown v. Sirmons*,

515 F.3d 1072, 1097 (10th Cir. 2008) (internal quotation and citation omitted).  This inquiry

applies only when two or more constitutional errors have been committed.  *Young v. Sirmons*,

551 F.3d 942, 972 (10th Cir. 2008) ("in the federal habeas context, cumulative error analysis

applies only to cumulative constitutional errors") (citation omitted), *cert. denied*, 130 S.Ct.

272 (2009).

As discussed above, the undersigned has found that none of Petitioner's claims

individually or collectively justify habeas corpus relief, and thus, Petitioner has failed to establish any constitutional errors with respect to the allegedly erroneous state court decisions Nor has Petitioner shown that any trial error rendered the trial so fundamentally unfair as to deprive Petitioner of his right to due process. As a result, the Petitioner has not demonstrated any errors to cumulate, and there is no reason to doubt the fundamental fairness of the trial. *See, e.g., Bunton v. Atherton*, 613 F.3d 973, 990 (10th Cir. 2010) ("the cumulative error doctrine does not apply here because we have not found the existence of two or more actual errors") (citation omitted). Reviewing Petitioner's claim of cumulative error under the deferential AEDPA standard, *Brown*, 515 F.3d at 1097, the undersigned finds that the OCCA's evaluation of the cumulative impact of the trial court errors was not contrary to or an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on the basis of cumulative error.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 20th day of December, 2010. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter.

ENTERED this 20th day of November, 2010.

_____

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE